### RICHARD CHARLES DOWNES *v.* WILLIAM S. SCOTT.

The act of Congress of 29th May, 1830, granting pre-emption rights to settlers on the public lands, which provides, sect. 2, that "where two or more persons are settled on the same quarter section, it may be divided between the two first actual settlers, if, by a north and south, or east and west line, the settlement or improvement of each can be included in a half-quarter section, and that in such case the settlers shall each be entitled to a pre-emption of eighty acres elsewhere in said land district," is directory only. Its object is to give to each settler, *first*, the portion of land on which his improvements were made, and *secondly*, as nearly as possible, an equal quantity of land. Equality of value was not considered important. The direction of the line of division was of secondary consideration, and only intended to effect the principal object.

Where the United States have sold, and given a patent for a tract of land, the property is vested in the purchaser; and the laws of the State in which it is situated operate on it as on other property, except as to taxation, or other special exception; and in effecting a partition, such laws, and the contract of the parties, will, as in other cases, control.

In ordering a partition between settlers on the same quarter section, holding as tenants in common, by purchase from the United States under the pre-emption law of 29th of May, 1830, or between others holding under them, the provisions of that act will be considered as expressing the original intention of the parties as to the direction of the line of division, where the quarter section is a regular one; *aliter*, as to irregular or fractional surveys. Where lines drawn north and south, or east and west would not give to each an equal quantity of land, as well as his improvements, the line must be drawn in some other direction, or the land cannot be divided in kind.

The verdict of a jury must be always understood with reference to the pleadings, and as responsive to the issues made by them.

THE plaintiff is appellant from a judgment of the District Court of Madison, *Curry, J.*

GARLAND, J. The petitioner alleges that he is the legal owner and possessor of the undivided half of a tract of land, containing $133\frac{8}{100}$ acres, situated on both sides of Brushy bayou, being lots Nos. 1 and 3, of section No. 6, in township No. 16 north, range No. 13 east, which land was patented by the United States, as a pre-emption right, to Elijah Evans and Levi Blakey, as tenants in common, and not as joint tenants. He avers that, by the laws of the United States, it is required that lands so situated and purchased, shall be divided between the co-proprietors or tenants in common, by a north and south, or east and west line. He states this

Downes v. Scott.

land must be divided by a north and south line, in order to give each party the improvements of his vendors, the original settlers ; and that he is the legal owner of the portion which includes the site of the original settlement of the patentee Elijah Evans, which is on the east half of said land. It is further represented that the defendant Scott is in possession of the west half, and of part of the east half of the said land ; that he has enclosed and is cultivating some of the land belonging to the petitioner (from ten to twelve acres), by doing which the petitioner has sustained damage to the amount of $350. He alleges that he has frequently desired the defendant to divide the tract by a north and south line, which he refuses to do. The petition concludes with a prayer, that the land may be divided by a north and south line ; and that the complainant be decreed to be the legal owner and possessor of the east half ; and that Scott pay him $350 as damages.

The defendant, in his answer, admits that the plaintiff is the owner of an undivided half of the land, which he says is in two distinct lots, as stated in the patent ; avers that he is, and always has been willing, to divide the land by a north and south line, but that he objects to throwing the two lots together, and dividing them as a whole, by a continuous north and south, or east and west line. He alleges that he has frequently desired the plaintiff to divide each lot by a north and south line, but that the plaintiff refuses so to do. He joins in the prayer for a partition according to law ; prays for $200 damages from the plaintiff for instituting a vexatious suit against him, and for costs.

The case was tried by a jury. It was shown by the public surveys, that, in consequence of a considerable stream running through the section, the north half was not, as in other sections, divided into two equal quarters, but into three lots of irregular shapes, and containing unequal quantities. Lots 1 and 3 adjoin each other, the former being a slip of upwards of a mile front on the north side of the bayou, with very little depth at one extremity, and less than a half a mile at the other. The superficial quantity, is $60\frac{80}{100}$ acres. Lot No. 3 is nearly triangular, lying on the south side of the bayou, and so far as it fronts thereon, is opposite to lot 1 ; and contains $72\frac{28}{100}$ acres. It is proved that, by dividing the land by a continuous north and south line through the

two lots, the plaintiff would have on the east side of the line near-
ly twice as much land as the defendant would have on the west,
as well as much the largest portion of the cleared land ; and that
his share would be more valuable than the other by $300.   It was
also shown that lot No. 3 is subject to inundation, and that by
dividing it as desired by the plaintiff, much the largest proportion
of the overflowed land would fall to the defendant's share.   It is
proved that by dividing each lot equally by a north and south line,
each party will have his houses in lot No 1 on the north side of
the bayou, and have his portion of No. 3 opposite ; but that the
fronts will not be exactly the same.

The jury found that the lots Nos. 1 and 3 should be divided se-
parately in equal portions, by a line running north and south.
After overruling a motion for a new trial, the court ordered the
lots to be partitioned separately, by running a north and south line
through each, so as to divide each lot into equal portions, and ap-
pointed a surveyor to run the division lines and return an account
of his operations into court, on or before the first day of the suc-
ceeding term ; and ordered the plaintiff to pay the costs up to that
time.   From this judgment he has appealed.

The application for a new trial was based on the misdirections
of the judge in his charge to the jury, on the verdict being contra-
ry to the law and evidence, and, lastly, on the ground that it was
void for uncertainty, as it does not definitely specify whether the
plaintiff is to have the east or the west half of the land.

The judge charged the jury that the act of Congress, relating
to pre-emption rights, passed on the 29th of May, 1830,* was not
applicable to the case before them ; that it had no effect as to
the partitioning of lands, sold to settlers on the same quarter sec-
tion, or fractional quarter, after a patent had issued ; that such
partition must be made in conformity to the laws of the State and

---

* This act provides : Sect. 2. That if two or more persons be settled upon the same
quarter section, the same may be divided between the two first actual settlers, if, by a
north and south or east and west line, the settlement or improvement of each can be
included in a half-quarter section ; and in such case the said settlers shall each be en-
titled to a pre-emption of eighty acres of land elsewhere in said land district, so as not
to interfere with other settlers having a right of preference.

the principles of equity and justice; and that the object of the act was to entitle two settlers on the same quarter section or fractional quarter, to the benefit of a *float*, or claim for eighty acres of land elsewhere. To this charge, the plaintiff excepted. We are of opinion that the judge did not essentially err. The language used by him does not exactly express our ideas, but the conclusion we have come to is the same. We are of opinion that, after the United States have sold, and given a patent for a tract of land, the property is vested in the citizen entitled to the patent, and that the State laws operate on it precisely as on all other property, except as to taxation or other special exception ; and that for effecting a partition, the laws of the State and the contract of the parties, are, as in other cases, to control. The act of Congress under which Blakey and Evans purchased the land, formed the contract between them, as to the quantity which each was to have. The principal objects of that contract were, *first,* to give each party the portion of land on which his house and improvements were situated ; *secondly,* to give, as nearly as possible, an equal quantity to each. The course of the lines is a secondary consideration, and intended only as a means of effecting the principal objects. An equality of value in the portions does not seem to have been considered as important, and is not included in the contract. Courts, in ordering a partition between two original pre-emptors, or those holding under them, will look to the act of Congress as containing, in relation to regular quarter sections, the primary intention of the parties, as to the direction of the lines ; but in relation to a fractional, or as the Commissioner of the General Land Office calls it, an anomalous survey, the rule does not apply ; and the judge was, therefore, correct, in directing the jury that the act of Congress was not to govern them absolutely. We can easily imagine two improvements to be so situated on a fraction of land, that neither a north and south, nor east and west line, would give each an equal quantity, and his improvements. In such a case, the line must take some other direction, or the land could never be divided in kind. An examination of the act of Congress will show, that there is nothing mandatory in it, even to its own officers. It is directory only in its operation on

the rights of individuals, and is not so unbending as to compel the perpetration of an act of gross injustice.

A perusal of the evidence satisfies us that the jury decided in conformity to it, and to the principles of law and justice.

The plaintiff complains that the verdict is indefinite and uncertain, as it does not state whether he is to have the east or west portion of the lots, when divided. The verdict and judgment might have been somewhat more definite in this respect; but when we look at the whole case, we think the parties will not probably lose any of their rights from the cause complained of. It has long been settled by this court, that the verdict of a jury must always be understood and construed with reference to the pleadings, and will always be considered as responding to the issues made by them. 5 Mart. 456. 3 La. 70. When we refer to the petition, we see that it is stated that the plaintiff is entitled to the eastern portion of the land. He states that his buildings and improvements are on it; and that the defendant's are on the western part, if the line be run north and south. The defendant claims in the same way, and says the same thing. It will be somewhat strange, if the parties misunderstand each other and their rights, when they agree in their statements as to the position of each. But should any mistake be likely to arise, we do not doubt that the District Judge will, when the *procès-verbal* of the surveyor shall be returned into court, state distinctly which portions of the lots of land the plaintiff is to have.

We are of opinion that a division of each lot of land into equal portions by a north and south line, is legal and just; and, therefore, affirm the judgment with costs.

*D. Bradford*, and *Copley*, for the appellant. No counsel appeared for the defendant.